**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 22-1176

YASMIN CLARIBAL RIVAS DE NOLASCO; ROUESELYN LILIANA VASQUEZ-RIVAS; G.E.N.R.; A.S.N.R.,

        Petitioners,

    v.

PAMELA JO BONDI, Attorney General,

        Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Argued: March 18, 2025                  Decided: August 14, 2025

Before NIEMEYER and RICHARDSON, Circuit Judges, and FLOYD, Senior Circuit Judge

Petition denied by published opinion. Judge Floyd wrote the opinion in which Judge Niemeyer joined. Judge Richardson joined the opinion except for Part III.B, wherein he concurred in the judgment.

**ARGUED:** A Joo Kim, YACUB LAW OFFICES, LLC, Woodbridge, Virginia, for Petitioners. Jonathan Aaron Robbins, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Mercedes Christina Altman, LAW OFFICE OF MERCEDES ALTMAN, PLLC, Westbury, New York, for Petitioners. Brian Boynton, Principal Deputy Assistant Attorney General, Melissa Neiman-Kelting, Assistant Director, Bryan S. Beier, Senior Litigation Counsel, Erik R. Quick, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

FLOYD, Senior Circuit Judge:

Yasmin Rivas de Nolasco petitions this Court for review of the Board of Immigration Appeals' (BIA) decision denying her asylum status based upon her membership in two particular social groups (PSGs). She also contends that she is entitled to statutory withholding of removal. Having reviewed the record, heard oral argument, and considered supplemental briefing on our jurisdiction to consider the petition, we deny Rivas de Nolasco's petition for review.

I.

Rivas de Nolasco and her three children, all natives and citizens of El Salvador, entered the United States in November 2015 without being admitted or paroled. Shortly thereafter, the Department of Homeland Security (DHS) issued Notices to Appear, charging Rivas de Nolasco and her children as removable. *See* 8 U.S.C. § 1182(a)(6)(A)(i) ("An alien present in the United States without being admitted or paroled . . . is inadmissible.").

Rivas de Nolasco conceded removability before the Immigration Judge (IJ). However, she filed applications for asylum, 8 U.S.C. § 1158, and statutory withholding of removal, 8 U.S.C. § 1231(b)(3)(A), based upon her fear of persecution due to membership in two PSGs. She identified those PSGs as (1) her immediate family, and (2) single Salvadoran women.

Rivas de Nolasco stated that she left El Salvador "because of the MS gang," also referred to as MS-13. J.A. 189. To support her claim for relief, Rivas de Nolasco submitted

2

an affidavit describing incidents of alleged persecution in El Salvador. First, she stated that her then-fifth-grade son, Axel, had been "threatened by a classmate named Jose" who was "joining the MS gang and was trying to get other students to sell drugs with him at the school." *Id.* Axel informed Rivas de Nolasco of this incident after the family had entered the United States. She alleged that Jose had threatened harm to Axel and his family if he did not participate in selling the drugs; her testimony before the IJ characterized these threats as threats of death. *See id*. at 152. Her written affidavit did not characterize these threats as death threats. *See id.* at 189. Axel's own affidavit stated that he avoided Jose after two threatening encounters but did not have another interaction with Jose. Axel also characterized the threats as more vague threats of harm as opposed to death threats. *See id.* at 194.

The second incident described by Rivas de Nolasco occurred at her home in El Salvador. She stated that two armed gang members forced their way into her home to hide from the police, and threatened her if she did not let them in. Rivas de Nolasco stated she believed that her home was targeted because she lived alone with her children, while men lived in the homes located near hers. She and her children left the country two weeks after this incident.

After a hearing, the IJ denied Rivas de Nolasco's applications for relief, and the BIA affirmed its decision. It concluded that the threats against Axel did not constitute persecution because they "lacked specificity and immediacy." *Id.* at 4. The BIA also reasoned that even if the incident at Rivas de Nolasco's home with the gang members amounted to persecution, she had not demonstrated that it was on account of her

3

membership in a PSG. Further, it affirmed the IJ's decision that the PSG of single Salvadoran females is not cognizable, noting that Rivas de Nolasco had not established that "'single' Salvadoran females are perceived as a distinct group by Salvadoran society." *Id.* at 5.

Rivas de Nolasco now petitions this Court for review.[1] She argues the BIA erred when it dismissed her appeal because she had established that she was entitled to asylum and statutory withholding.[2] We requested supplemental briefing on the question of our jurisdiction to consider this petition, which is now complete. After considering the record and the parties' contentions, we deny Rivas de Nolasco's petition for review.

II.

We first assess whether 8 U.S.C. § 1252(b)(1) precludes our review of the merits of Rivas de Nolasco's petition. Section 1252(b)(1) states that petitions for review of orders of removal "must be filed not later than 30 days after the date of the final order of removal." We have previously characterized § 1252(b)(1) as jurisdictional. *See Martinez v. Garland*, 86 F.4th 561, 566 (4th Cir. 2023), *vacated*, *Riley v. Bondi*, 145 S. Ct. 2190 (2025); *Santos-de Jimenez v. Garland*, 53 F.4th 173, 174 (4th Cir. 2022)). "If a party neglects to

---

[1] Rivas de Nolasco's children are derivative beneficiaries of their mother's application, so their claims succeed or fail alongside hers. *See* 8 U.S.C. § 1158(b)(3).

[2] Rivas de Nolasco also sought CAT relief before the IJ, but she expressly abandoned that argument before the BIA. J.A. 49. We therefore lack "the authority to consider the argument in the first instance." *See Kouyate v. Garland*, 122 F.4th 132, 140 (4th Cir. 2024) (quoting *Portillo Flores v. Garland*, 3 F.4th 615, 632 (4th Cir. 2021) (en banc)).

4

raise, concedes, or waives" a nonjurisdictional argument, "a court generally has no obligation to consider it." *Riley*, 145 S. Ct. at 2201. But "[t]rue jurisdictional requirements . . . are different" because "[a] federal court must always satisfy itself that it has jurisdiction." *Id.*; *see also* 33 *Wright & Miller's Federal Practice & Procedure* § 8316 (2d ed. 2025) ("A litigant's failure to comply with a jurisdictional bar deprives a court of all authority to hear a case, regardless of waiver or equitable considerations.") (citation modified).

Proceeding with this jurisdictional understanding of § 1252(b)(1), we concluded that a noncitizen had failed to clear this jurisdictional bar in *Martinez*, 86 F.4th at 571. Martinez had reentered the United States several months after being deported in 2018; when DHS detained him in 2020, his "prior order of removal" was reinstated "from its original date and [was] not subject to being reopened or reviewed." *Id.* at 564 (quoting 8 U.S.C. § 1231(a)(5) (provision governing "Reinstatement of removal orders against aliens illegally reentering")). So, because Martinez opted not to contest the removability determination and only appealed his withholding and CAT claims to the BIA, that removability determination became final at that time. *See id.* But § 1252(b)(1) requires a petition for review be filed within 30 days of a "final order of removal," and because Martinez did not file his petition for review until about two years after the removal order became final, he needed to "identify another eligible order." *Martinez*, 86 F.4th at 567.

What about the BIA proceedings culminating in the denial of Martinez's statutory withholding and CAT claims? Orders denying those kinds of relief, standing alone, also do not constitute final orders of removal. *See id.* That is because neither concludes a

5

noncitizen is deportable or orders their deportation, and instead an "'order of removal is separate from and antecedent to a grant of withholding of removal' or CAT relief." *Id.* (quoting *Johnson v. Guzman Chavez*, 594 U.S. 523, 540 (2021)). Further, eligibility for either form of relief does not "affect the validity" of a removal order. *Id.* (quoting *Nasrallah v. Barr*, 590 U.S. 573, 582 (2020)); *see Guzman Chavez*, 594 U.S. at 540 (same). Lastly, "[a]lthough statutory withholding and CAT orders are not themselves orders of removal, we nevertheless may review them as part of our review of a final order of removal." *Martinez*, 86 F.4th at 567; *see* 8 U.S.C. § 1252(b)(9) ("zipper clause" permitting review of "all questions of law and fact . . . arising from any action taken or proceeding brought to remove [the] alien from the United States").

In this case, Rivas de Nolasco conceded removability before the IJ, and did not appeal that determination. *See* J.A. 79. The only matters she pressed before the BIA were the denial of her asylum and withholding claims. And after the BIA rejected her appeal, Rivas de Nolasco filed a petition for review well over 30 days after the IJ had finalized its removability determination which she did not appeal. In light of justiciability concerns related to the timeliness of Rivas de Nolasco's petition for review, we ordered supplemental briefing on the following question:

> Does this Court have jurisdiction given the 8 U.S.C. § 1252(b)(1) requirement that the "petition for review must be filed not later than 30 days after the date of the final order of removal"? *See Martinez v. Garland*, 86 F.4th 561 (4th Cir. 2023); *Salgado v. Garland*, 69 F.4th 179 (4th Cir. 2023); *Johnson v. Guzman Chavez*, 594 U.S. 523 (2021); *Nasrallah v. Barr*, 590 U.S. 573 (2020).

In supplemental briefing, both parties argued we possessed jurisdiction in this matter and urged us to consider the merits of Rivas de Nolasco's petition.

6

But then, in *Riley v. Bondi*, the Supreme Court altered the state of play and held that § 1252(b)(1) is "not jurisdictional." 149 S. Ct. at 2203. The Court reasoned that, "[b]ecause jurisdictional rules have a unique capacity to disrupt the orderly adjudication of disputes," it was "reluctant to label a rule 'jurisdictional' unless Congress has clearly signaled that the rule is meant to have that status." *Id.* at 2201. And it in turn, it concluded this "demanding requirement" was not met when it comes to the language of Section 1252(b)(1). *Id.* at 2202.[3] Therefore, in light of the Supreme Court's recent pronouncement, we will read § 1252(b)(1) as a nonjurisdictional claims-processing rule.

"Courts generally decide only the questions that are presented by the parties." *Id.* at 2201. "[A] court will not enforce a procedural rule against a non-complying party if his opponent has forfeited or waived an objection." *Harrow*, 601 U.S. at 483–84. The government has consistently maintained that we may hear this case, albeit premised upon our previous holdings classifying the 30-day filing deadline as jurisdictional. But even then, it maintained the position that "a different finality analysis applies" when a noncitizen concedes removability but appeals their asylum claim to the BIA, and under that finality analysis "the petition is timely." Supplemental Brief of Respondent at 1, 5. At bottom, the

---

[3] The Court reasoned that the statutory language informs noncitizens the steps they must take if they want judicial review, but "provides no directives to *courts*. It makes no reference to jurisdiction and lacks any language 'demarcat[ing] a court's power.'" *Riley*, 145 S. Ct. at 2202 (emphasis in original) (quoting *Harrow v. Dep't of Def.*, 601 U.S. 480, 484 (2024)). The Court further observed that the statutory provision was not placed amongst sections pertaining to, for example, appellate courts' review authority, 8 U.S.C. § 1252(b)(4), or matters not subject to judicial review, *id.* § 1252(a)(2). *Riley*, 145 S. Ct. at 2202. Congress, the Court concluded, "eschewed those logical homes for a true jurisdictional provision." *Id.*

7

parties have agreed throughout this litigation that § 1252(b)(1) does not foreclose our review of the petition.

Because the government does not press this basis for declining to review the petition, we will consider the merits of the petition. *See Harrow*, 601 U.S. at 483–84. We therefore leave for another day the question of §1252(b)(1)'s effect when a noncitizen concedes removability but seeks asylum before the IJ, only raises the denial of their asylum claim to the BIA, and only files a petition for review following the BIA's decision.

III.

We now address the merits of Rivas de Nolasco's petition for review. She argues that the BIA erred by upholding the IJ's denial of her claims for asylum and statutory withholding. Asylum requires a lower evidentiary showing than that of withholding. "Because the burden of proof for withholding of removal is higher than for asylum . . . an applicant who is ineligible for asylum is necessarily ineligible for withholding of removal." *Camara v. Ashcroft*, 378 F.3d 361, 367 (4th Cir. 2004). The burden to demonstrate eligibility for asylum rests with the applicant, who must establish three elements:

> (1) that the applicant has suffered past persecution or has a well-founded fear of future persecution; (2) that the persecution is "on account of" [their] race, religion, nationality, membership in a particular social group, or political opinion; and (3) that the persecution is perpetrated by an organization that [their] home country's government is unable or unwilling to control.

*Portillo Flores*, 3 F.4th at 626 (quoting *Arita-Deras v. Wilkinson*, 990 F.3d 350, 357 (4th Cir. 2021)).

8

In this case, the Petitioner's request for relief is premised upon (1) her membership in the PSG of her immediate family, and persecution she therefore suffered on that basis because of death threats directed at her son Axel; and (2) her membership in the PSG of single Salvadoran women, and persecution she therefore suffered on that basis when her house was allegedly singled out for the gang members to use to hide from pursuing police officers.

"We review the BIA's legal conclusions de novo." *Id.* at 625. "[W]e review factual findings for substantial evidence, treating them as conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Ibarra Chevez v. Garland*, 31 F.4th 279, 288–89 (4th Cir. 2022) (quoting *Portillo Flores*, 3 F.4th at 626). And when, as here, the BIA issues "its own detailed opinion affirming the IJ with further reasoning of its own but without expressly adopting the IJ's opinion," we focus our review on the BIA order. *Wambura v. Barr*, 980 F.3d 365, 368 n.2 (4th Cir. 2020). Ultimately, we will uphold the BIA decision "unless it is manifestly contrary to law and an abuse of discretion." *Portillo Flores*, 3 F.4th at 626 (quoting *Cordova v. Holder*, 759 F.3d 332, 337 (4th Cir. 2014)). "The BIA abuses its discretion 'if it fails to offer a reasoned explanation for its decision, or if it distorts or disregards important aspects of the applicant's claim.'" *Id.* (quoting *Cordova*, 759 F.3d at 337).

A.

We first address Rivas de Nolasco's contentions regarding the incident in which gang members demanded entry to and then hid in her home. The IJ found that this incident

9

established persecution, but it concluded the Petitioner had not established that this persecution was "on account of" her status as a single Salvadoran female. *See Arita-Deras*, 990 F.3d at 357. The BIA, in turn, agreed. It assumed *arguendo* that the incident at her home constituted persecution and that her proposed PSG of single Salvadoran females was cognizable. However, it "discern[ed] no clear error in the [IJ]'s finding that the gang members during the September 2015 incident were motivated by their desire to hide from the police and that they selected [Rivas de Nolasco]'s home for ease of access and not on account of a protected ground." J.A. 5.

Although Rivas de Nolasco's argument on this point is not particularly well-developed, after reviewing the record and hearing oral argument we conclude the BIA did not err in upholding the IJ's judgment. As evidence supporting her contention that the gang members targeted her home because she was a single woman, Rivas de Nolasco has put forth that gang members knew her name and noted that she was known as being single in the community. She stated that the gang members were fleeing the police after assaulting an artisan at a nearby festival, and that they remained in her home for approximately an hour until an unknown individual called one of their phones to confirm the police were no longer in the area. She also put forth country conditions evidence tending to show that women in El Salvador face mistreatment by gang members. Finally, a friend present the evening of the incident submitted an affidavit corroborating Rivas de Nolasco's testimony about the gang members using her name and threatening harm unless they were allowed to hide in the home.

We are not convinced that this evidence compelled the conclusion that Rivas de

10

Nolasco's status as a single Salvadoran woman was "at least one central reason for persecuting the applicant." 8 U.S.C. § 1158(b)(1)(B)(i). "A central reason is not necessarily '*the* central reason or even a dominant central reason,' but it must be more than 'incidental, tangential, superficial, or subordinate' to another reason for harm." *Cedillos-Cedillos v. Barr*, 962 F.3d 817, 824 (4th Cir. 2020) (emphasis in original) (quoting *Crespin-Valladares v. Holder*, 632 F.3d 117, 127 (4th Cir. 2011)).

The BIA concluded that the gang members were "motivated by their desire to hide from the police and that they selected [Rivas de Nolasco]'s home for ease of access and not on account of a protected ground." J.A. 5. Substantial evidence supports that conclusion. That said, in past cases we "have cautioned the BIA against taking an 'excessively narrow' approach to the nexus requirement." *Cedillos-Cedillos*, 962 F.3d at 825 (quoting *Hernandez-Avalos v. Lynch*, 784 F.3d 944, 949 (4th Cir. 2015)).

For example, in *Hernandez-Avalos*, gang members threatened to kill the petitioner if she did not allow her son to join their gang. *See* 784 F.3d at 947. The BIA rejected the petitioner's contention that she had been persecuted as a member of her son's nuclear family (a protected ground for asylum purposes, *see Crespin-Valladares*, 632 F.3d at 125), and instead concluded she was persecuted because she would not consent to her son's gang membership. *Hernandez-Avalos*, 784 F.3d at 949. We determined that this was an "excessively narrow reading" of the nexus requirement, *id.*, and remanded to the agency. Characterizing the distinction drawn by the BIA as "meaningless," we emphasized that it was "unreasonable to assert that the fact that [petitioner] is her son's mother is not *at least one* central reason for her persecution." *Id.* at 950 (emphasis in original).

11

Unlike the record before this Court in *Hernandez-Avalos*, the record does not compel a finding that Rivas de Nolasco's status as a single Salvadoran was "at least one central reason" that the gang members demanded entry to her home to hide from the police. *Cedillos-Cedillos*, 962 F.3d at 826 (quoting 8 U.S.C. § 1158(b)(1)(B)(i)). In addition to explaining her belief regarding her status as a single woman before the IJ, Rivas de Nolasco testified that she "lived in a simple house and you could really see it from the street." J.A. 151. The intruders also were fleeing from police, and the BIA was free to draw the inference from this evidence that they were motivated purely by convenience and were not specifically seeking a single woman's home. *See Madrid-Montoya v. Garland*, 52 F.4th 175, 182 (4th Cir. 2022) ("The BIA had to make inferences about the narcotraffickers' motivations given the sparse factual record before it."). And although the home invasion incident itself is corroborated by witness affidavits, the record simply does not demonstrate that the agency was compelled to find that Rivas de Nolasco's status as a single Salvadoran woman was a central reason for that persecution.

The standard of review we must apply requires us to "treat the IJ's factual findings as conclusive, unless a reasonable adjudicator would be compelled to reach a contrary conclusion." *Cruz v. Sessions*, 853 F.3d 122, 128 (4th Cir. 2017) (describing standard as "stringent"). That stringent standard has not been met here with respect to a lack of nexus between the home invasion and Rivas de Nolasco's status as a single Salvadoran woman.[4]

---

[4] Because we resolve Petitioner's asylum claim on nexus grounds, we do not reach her arguments regarding the cognizability of the PSG of "single Salvadoran females."

12

B.

We now address the other incident of alleged persecution upon which Rivas de Nolasco bases her asylum claim: alleged threats made to Axel by another fifth grader at school before the family departed El Salvador. The IJ concluded that those threats did not amount to persecution, and the BIA agreed. The BIA also concluded that Rivas de Nolasco had not established a nexus between this alleged persecution and Rivas de Nolasco's status as a member of Axel's immediate family. On the record before us, we conclude the BIA was not compelled to conclude otherwise and therefore did not err. *See Ibarra Chevez*, 31 F.4th at 288–89.

Rivas de Nolasco engages little with this issue beyond her general assertions that she was entitled to relief because of these threats allegedly made to Axel. However, substantial evidence supports the BIA's conclusion that Rivas de Nolasco was not persecuted on this basis. Indeed, she testified that she was not even made aware of these threats until after the family had entered the United States. *See* J.A. 189. When an asylum applicant contends that they experienced persecution "on account of" family ties, they "must demonstrate that these ties are more than 'an incidental, tangential, superficial, or subordinate reason' for [their] persecution." *Hernandez-Avalos*, 784 F.3d at 949 (quoting *Quinteros-Mendoza v. Holder*, 556 F.3d 159, 164 (4th Cir. 2009)). It does not appear this standard has been met.

*Hernandez-Avalos* provides helpful contrast here, too. In that case, the petitioner was threatened by members of a gang who held a gun to her head and warned her that if she opposed her son joining the gang, "[she] was the one who was going to die." 784 F.3d

13

at 947; *see also Cruz*, 853 F.3d at 129 (applicant persecuted on basis of familial ties after husband's disappearance when persecutor made calls threatening harm if applicant reported suspect to police and killed applicant's family pets). As explained, there was not even a threat made to Rivas de Nolasco related to the other student's unsuccessful attempt to recruit Axel to sell drugs for the gang. The record before us, given that it lacks evidence purporting to show otherwise, simply does not compel the conclusion that Rivas de Nolasco had been persecuted on the basis of her membership in her immediate family.[5]

\* \* \* \* \*

"[B]ecause the standard for withholding of removal is higher than the standard for asylum, if applicants cannot demonstrate asylum eligibility, their applications for withholding of removal will necessarily fail as well." *Ayala-Osegueda v. Garland*, 92 F.4th 220, 227 (4th Cir. 2024) (quoting *Djadjou v. Holder*, 662 F.3d 265, 272 (4th Cir. 2011)). Because we uphold the denial of Rivas de Nolasco's claim for asylum, her application for withholding of removal fails with it.

---

[5]Although it was, of course, Axel who purportedly received these threats from his classmate, Rivas de Nolasco has not previously and does not now argue that this conduct suffices to establish conditions necessary to qualify Axel for asylum. Therefore, we do not decide this case on that basis. Nor do we address the BIA's conclusion that the threats were not of sufficient severity to constitute persecution, because we need not reach that question to resolve this case, either. However, we emphasize that we have "repeatedly refused to discount the seriousness of a death threat," including refusing to allow the BIA to "discount credible death threats" because the petitioner "did not suffer major physical injuries or long-term mental harm." *Sorto-Guzman v. Garland*, 42 F.4th 443, 449 (4th Cir. 2022).

14

IV.

In accordance with the foregoing, we deny Rivas de Nolasco's petition for review.

*PETITION FOR REVIEW DENIED*